UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARRYL H.,

                              Plaintiff,

v.                                                                                      CASE # 1:21-cv-01029

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                                                       OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC          JUSTIN D. JONES, ESQ.
  Counsel for Plaintiff                                            KENNETH R. HILLER, ESQ.
600 North Bailey Ave
Suite 1A
Amherst, NY 14226


U.S. SOCIAL SECURITY ADMIN.                             ARIELLA R. ZOLTAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II        SATHYA OUM, ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278


J. Gregory Wehrman, U.S. Magistrate Judge,

### MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the

undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter

is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant

to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record

and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative

record is **DENIED**, the defendant's motion for judgment on the administrative record is

**GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.      RELEVANT BACKGROUND

A.      Factual Background

Plaintiff was born on July 2, 1968, and has less than a high school education. (Tr. 333-34). Initially plaintiff alleged disability based on bullet in his right hip, plate in the top of left food, incisional hernia repairs, high cholesterol, depression, anxiety, sleep issues, ADHD, and illiteracy. (Tr. 339). His alleged onset date of disability was November 26, 2013.[1] (Tr. 333).

B.      Procedural History

On August 23, 2016, plaintiff applied for a period of Supplemental Security Income Benefits (SSI) under Title XVI of the Social Security Act. (Tr. 302). Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge (ALJ). On January 17, 2019, plaintiff appeared with his attorney before ALJ Bryce Baird. (Tr. 73-117). On April 15, 2019, ALJ Baird issued a decision finding plaintiff not disabled. (Tr. 139-61). On June 3, 2020, the Appeals Council (AC) granted plaintiff's request for review (Tr. 162-65) and remanded the case back to the ALJ. On January 20, 2021, plaintiff and his attorney appeared for a telephone hearing before ALJ Baird. (Tr. 39-72). Vocational expert Melissa Howell also appeared and testified. (Tr. 65-71). On January 29, 2021, ALJ Baird issued a decision finding plaintiff not disabled. (Tr. 12-32). On July 30, 2021, the AC denied plaintiff's request for review (Tr. 1-6), thereby making the ALJ's decision the Commissioner's final decision. This action then followed.

C.      The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1.      The claimant has not engaged in substantial gainful activity since August 12, 2016, the

---

[1] SSI is not payable any time before the month following the month the SSI application is filed. 20 C.F.R. § 416.335.

application date (20 CFR 416.971 et seq.).

2.      The claimant has the following severe impairments: obesity; remote history of a gunshot wound to his right hip; a history of hernia, status post-surgical repair, left foot arthritis with a remote injury, post-traumatic stress disorder (PTSD), depression, and anxiety (20 CFR 416.920(c)).

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, sit about 6 hours total in an 8-hour workday, and stand and/or walk about 6 hours total in an 8-hour workday. He could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant could occasionally balance, stoop (bend), and crouch, but he could not kneel or crawl. He could never work around excessive vibrations. He could not be exposed to hazards (e.g., unprotected heights, moving machinery, etc.). The claimant is limited to work in which he would not be required to understand and/or communicate more than simple information. He could perform no more than simple, routine, and repetitive tasks that could be learned after a short demonstration or within 30 days. The claimant is limited to work that would allow an individual to be off task up to 5 percent of the workday, in addition to regularly scheduled breaks. He could perform work that requires doing the same tasks every day with little variation in location, hours, or tasks. The claimant could not perform a job requiring driving a vehicle or work that requires travel to unfamiliar places. He could have no more than superficial interaction with the general public, but he could have up to occasional interaction with coworkers.

5.      The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on July 2, 1968 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7.      The claimant has a limited education (20 CFR 416.964).

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since August 12, 2016, the date the application was filed (20 CFR 416.920(g)).
(Tr. 12-32).

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff argues the ALJ erred in coming to a specific RFC without relying on an opinion. Plaintiff also asserts the ALJ erred in weighing opinion evidence. (Dkt. No. 8 [Plaintiff's Mem. of Law]).

### B.    Defendant's Arguments

In response, defendant asserts substantial evidence supports the ALJ's RFC determination and the ALJ properly evaluated the medical and other source opinions. (Dkt. No. 11 [Defendant's Mem. of Law]).

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

The RFC is an assessment of "the most [plaintiff] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).  The ALJ is responsible for assessing a plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what plaintiff can still do, provided by any medical sources. *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c). In this case, the ALJ determined that plaintiff could perform light work with the following additional limitations:

Claimant could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, sit about 6 hours total in an 8-hour workday, and stand and/or walk about 6 hours total in an 8-hour workday. He could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant could occasionally balance, stoop (bend), and crouch, but he could not kneel or crawl. He could never work around excessive vibrations. He could not be exposed to hazards (e.g., unprotected heights, moving machinery, etc.). The claimant is limited to work in which he would not be required to understand and/or communicate more than simple information. He could perform no more than simple, routine, and repetitive tasks that could be learned after a short demonstration or within 30 days. The claimant is limited to work that would allow an individual to be off task up to 5 percent of the workday, in addition to regularly scheduled breaks. He could perform work that requires doing the same tasks every day with little variation in location, hours, or tasks. The claimant could not perform a job requiring driving a vehicle or work that requires travel to unfamiliar places. He could have no more than superficial interaction with the general public, but he could have up to occasional interaction with coworkers. (Tr. 23).

Plaintiff argues the RFC was unsupported by substantial evidence because "the ALJ failed to fully rely on any medical opinion." (Dkt. No. 8 at 15). Plaintiff contends that since the ALJ did

6

not give controlling or substantial weight to any medical opinion, it is unclear precisely where the limitations came from. (*Id.* at 16). The Second Circuit has specifically rejected plaintiff's argument and held that an RFC may be supported by substantial evidence even if it does not correspond to any particular medical opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)(the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render a RFC finding consistent with the record as a whole); *Wynn v. Comm'r of Soc. Sec.*, 342 F. Supp. 3d 340, 349 (W.D.N.Y. 2018) (where the ALJ discussed four separate opinions relating to plaintiff's work-related limitations, there was not a complete absence of opinion evidence relating to plaintiff's work-related limitations).

Although the ALJ considers opinions from medical sources, the final responsibility for determining the RFC is reserved to the Commissioner. *See* 20 C.F.R. §§ 416.920b(c)(3)(iii), 416.946(c); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.,* 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (citation omitted). To be sure, it is the ALJ that is responsible for deciding a claimant's RFC and, in making that determination, he must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources. *See* 20 C.F.R. §§ 416.945(a)(3), 416.946(c). In sum, "[a]n ALJ's conclusion need not 'perfectly correspond with any of the opinions of medical sources cited in his decision,' because the ALJ is 'entitled to weigh all of the evidence available to make a residual functional capacity finding that [is] consistent with the record as a whole.'" *Schillo*, 31 F.4th at 78 (*quoting Matta,* 508 F. App'x 53, 56).

In this case, ALJ Baird provided a thorough rationale, supported by substantial evidence, for his assessment of plaintiff's work-related limitations. Plaintiff's argument is focused on the

mental portion of the RFC and this decision will also focus on the mental limitations and evidence. In his decision, the ALJ identified normal mental status exam findings showing intact and normal cognitive functioning, cooperative behavior, normal speech, logical and linear thought processes, normal concentration, and intact memory. (Tr. 26-27). The ALJ also considered the State agency psychological consultants' prior administrative medical finding and the consultative examiner's October 2016 opinion that plaintiff could perform work with additional limitations. (Tr. 27, 29).

The ALJ specifically considered psychiatrist Dr. Monir A. Chaudhry's examination findings that generally showed euthymic mood, bright and appropriate affect, linear and goal directed thoughts, intact memory, and good cognition. (Tr. 27, *see e.g.*, Tr. 637, 639, 641, 643-44, 725, 729, 735, 739, 743, 747, 751, 757). The ALJ also considered treatment notes from plaintiff's mental health counselors, which also generally reflected normal findings such as intact thought processes, normal thought content, fair judgment and insight, and normal speech. (Tr. 27, *citing* Tr. 949, 952, 984). The ALJ additionally mentioned that at plaintiff's other unrelated/non-mental health medical appointments, he denied psychiatric symptoms, was negative for anxiety, depression, and sleep disturbances, and exhibited appropriate affect, demeanor, and psychomotor functioning. (Tr. 27, *citing* Tr. 583, 589, 894).

ALJ Baird referenced plaintiff's treatment history with Dr. Chaudhry and evidence of improvement when compliant with treatment. (Tr. 25). Plaintiff established care with Dr. Chaudhry about eight months prior to his SSI application but in April 2016, plaintiff reported he only saw a counselor on an as needed basis (p.r.n.). (Tr. 739). Dr. Chaudhry adjusted plaintiff's medications throughout 2016 and in February 2017 plaintiff reported good results with the addition of Abilify. (Tr. 747). The ALJ pointed to plaintiff's report to Dr. Chaudhry in May 2017 that his "medications [were] working wonders for me" (Tr. 25, *citing* Tr. 751). In September 2017, Dr.

Chaudhry reported that plaintiff was overall doing fairly well. (Tr. 638). Thereafter, the record indicates continued improvement with conservative treatment. For example, in September 2020, plaintiff reported that things were going well, that his only challenges concerned his son and frustrations with his school, and that he was less stressed now that his twins were not staying with him. (Tr. 985). It is well established that a plaintiff's testimony and the treatment notes may constitute "relevant evidence [that] a reasonable mind might accept as adequate to support" the RFC as determined by an ALJ. *Johnson v. Colvin*, No. 15-3483-CV, 2016 WL 5539890, at *2 (2d Cir. Sept. 29, 2016) (quoting Richardson, 402 U.S. at 401).

While plaintiff did experience periods of symptom exacerbation, they were due to familial and financial situational stressors. (Tr. 991, 994, 999). Notably, mental status findings during these periods remained unremarkable. (Tr. 993, 996, 998-99). Temporary exacerbations in symptoms, attributed to specific situational stressors, does not compel greater RFC limitations. *See e.g., Deborah R. v. Kijakazi*, No. 20-CV-1235-LGF, 2022 WL 34458, at *4 (W.D.N.Y. Jan. 4, 2022) (affirming ALJ's finding of no severe mental impairment where Plaintiff pointed to subjective complaints and situational stressors, but treatment notes reflected little to no objective mental health deficits, and collecting cases on the irrelevance of situational stressors).

The ALJ appropriately considered plaintiff's own reports of daily activities, which he concluded were inconsistent with disability. (Tr. 25). *See Scouten v. Colvin*, No. 15-CV-76S, 2016 WL 2640350, at *4 (W.D.N.Y. May 10, 2016) ("[t]here is no error where ... an ALJ bases his RFC on plaintiff's own testimony" together with relevant medical evidence). Plaintiff reported that he was independent in self-care, could prepare simple meals, do household chores, visit with friends and family, shop, use a computer or smart phone, handle finances, care for pets and children, and attend appointments. (Tr. 25, 346-50, 355). There are multiple references to childcare

responsibilities, including watching children till 7:30pm while his wife worked. (*See e.g.,* Tr. 347 (function report indicating that plaintiff cared for a one year old and a three year old), 447, 455, 462, 476, 493, 504, 639, 751, 852)).

Lastly, the ALJ considered the opinion evidence in assessing the RFC. Indeed, he did not attribute great or controlling weight to any opinion, but this did not create an evidentiary gap as argued by plaintiff. Plaintiff also argues the ALJ erred in the evaluation of the opinions from the psychiatric consultative examiner and plaintiff's counselors. (Dkt. No. 8 at 19). For the following reasons discussed below, these arguments fail.

Contrary to plaintiff's argument, the ALJ did not reject all opinion evidence; rather the RFC was supported by the opinions of Dr. Dipeolu and treating Counselor Gray. The ALJ relied on State agency psychological consultant A. Dipeolu, Ph.D.'s opinion that plaintiff would be able to perform simple one to three step tasks and respond appropriately to supervision (Tr. 27, 123). Dr. Dipeolu reviewed the record and found that plaintiff was only markedly limited in understanding, remembering, and carrying out detailed instructions, and also indicated plaintiff had no more than moderate limitations in all other areas of mental functioning. (Tr. 123, 125-27). In support, Dr. Dipeolu identified a normal mental status examination showing intact cognition for alertness, orientation, recall, registration, attention, and language, and in assessing mental limitations, considered a consultative examination showing significant delays of general knowledge and information, poor math computation skills, and inability to read. (Tr. 123, see Tr. 735-37). While the ALJ did not explicitly assign weight to Dr. Dipeolu's opinion, the ALJ relied on this opinion, which supports the ALJ's mental RFC finding. (*Compare* Tr. 23 with Tr. 123). The ALJ included portions of Dr. Dipeolu's findings into the RFC but also referenced it when assigning some weight to the opinion of Counselor Gray. (Tr. 27-28). *See Zabala v. Astrue*, 595

10

F.3d 402, 410 (2d Cir. 2010) (declining remand when opinion of treating physician incorrectly discounted as incomplete and unsigned because agency reconsideration unnecessary where "application of the correct legal principles to the record could lead [only to the same] conclusion").

In September 2018, plaintiff's treating counselor Amy Gray, M.A. assessed plaintiff had moderate social limitations. (Tr. 28, 655). The ALJ gave some weight to Counselor Gray's assessment because it was consistent with the totality of the evidence, including the grossly normal mental status findings when plaintiff was compliant with treatment. (Tr. 28). The ALJ also found that Counselor Gray's assessment was consistent with Dr. Dipeolu's findings of no more than moderate mental limitations. (Tr. 28). The ALJ further found that greater than moderate mental limitations were inconsistent with plaintiff's wide range of daily activities, including the ability to travel out of state and care for two young children. (Tr. 29-30). Contrary to plaintiff's argument, moderate mental limitations are not consistent with disabling mental limitations. *Rice v. Comm'r of Soc.* Sec., No. 18-cv-1369, 2020 WL 4283894, *4 (W.D.N.Y. July 27, 2020) (ALJ accounted for moderate-to-marked limitations appropriately dealing with stress by limiting plaintiff to simple work in a low stress environment involving simple routine decisions, occasional contact with others, and no production-rate pace).

The ALJ also properly gave little weight to Counselor Gray's October 2018 and Counselor Laura Elberty's letters "recommend[ing]" that plaintiff not "engage in employment" (Tr. 28, 579, 981). The ALJ properly noted that whether an individual is capable of working is an issue reserved to the Commissioner. (Tr. 28). 20 C.F.R. § 416.927(d)(1). Moreover, the ALJ correctly noted that Counselors Gray and Elberty were not acceptable medical sources, and thus, their assessments were not entitled deference. (Tr. 28). 20 C.F.R. § 416.913(a), (d). Plaintiff disputes the ALJ's reliance on Counselor Gray's September 2018 letter opining moderate mental limitations and

11

asserts that her October 2018 letter merited more weight because she had, at that time, a longer treatment relationship with plaintiff. (Dkt. No. 8 at 27-28). However, there is no indication that plaintiff's condition worsened and warranted greater limitations in the RFC finding.

Plaintiff next asserts the ALJ erred in weighing the opinion of psychiatric consultative examiner Dr. Zuckerman who performed a consultative psychiatric examination. (Dkt. No. 8 at 20; Tr. 492). During the examination, Dr. Zuckerman observed that plaintiff was fully oriented. He performed intellectual testing and noted that plaintiff's short-term working memory and general knowledge and information were "significantly delayed" while math computation skills were at the kindergarten to first grade level. (Tr. 495). Dr. Zuckerman opined that plaintiff would have moderate to severe impairment in recall and replicating simple-work related instructions, severe to profoundly severe impairment in complex work-related instructions, moderate to severe social impairment, and severe impairment in managing stress related to competitive employment. (Tr. 495).

While the ALJ accepted the tests results showing intellectual and mental limitations, he accorded little weight to Dr. Zuckerman's opinion because it was not well-supported and was inconsistent with the totality of the evidence, including Dr. Dipeolu's and Counselor Gray's assessments of no more than moderate limitations in mental functioning. (Tr. 27-28, 29-30). The ALJ also noted Dr. Zuckerman did not have a longitudinal treatment relationship and the opinion was based on a one-time examination. (Tr. 29). *See* 20 C.F.R. § 416.927(c)(2)(i). While a consultative examiner's opinion can be entitled to significant weight when it is supported by substantial evidence of record, where, as here, the opinion was not well-supported and inconsistent with the totality of the evidence, it was "entitled to no special deference." *See Lamorey v. Barnhart*, 158 F. App'x 361, 363 (2d Cir. 2006). Here, the ALJ still included significant restrictions in the

RFC based on Dr. Zuckerman's report but as discussed above, Counselor Gray and Dr. Dipeolu did not find more than moderate mental limitations and the ALJ found greater limitations inconsistent with plaintiff's wide range of daily activities. (Tr. 29-30).

The ALJ's reliance on plaintiff's daily activities, specifically his ability to care for two young children and travel out of state, was permissible. These activities are inconsistent with his allegations of debilitation. *Jones v. Saul*, No. 18-CV-6901L, 2020 WL 1285959, at *3 (W.D.N.Y. Mar. 18, 2020) (ALJ properly considered activities of daily living, including the ability to provide childcare, was inconsistent with providers' opinions).

Plaintiff additionally argues the ALJ did not properly assess the opinions from his mental health counselors. (Dkt. No. 8 at 25-29). As stated above, mental health counselors are not acceptable medical sources and their opinions cannot be regarded as such or considered for controlling weight. *See* 20 C.F.R. § 416.913(a), (d) (listing acceptable medical sources). The ALJ's consideration of Counselor Gray's opinions was discussed above. However, plaintiff's additional argument that the narrative explanations by his counselors should have been considered differently by the ALJ and adopted in the RFC is meritless. The narrative portions, such as plaintiff's PTSD caused "limitations and barriers" in "almost all aspects of his life," or "he would run away from mild conflicts by fleeing the situation," or that "anxiety caused gaps in attention and focus," were still inconsistent with the normal mental status findings, with his improvement when compliant with routine and conservative treatment, and with his wide range of daily activities. (Dkt. No. 8 at 29, Tr. 28).

As stated previously, the ALJ has the responsibility to determine a claimant's RFC, based on all of the relevant medical and other evidence in the record. To require that an RFC mirror a medical opinion would conflict with an ALJ's duties. Although plaintiff points to evidence in the record supporting his position, there exists an abundance of evidence supporting the ALJ's final

decision. *See Dyana G. o/b/o J.A.G. v. Comm'r of Soc. Sec.*, No. 19-CV-805-FPG, 2021 WL 465249, at *3 (W.D.N.Y. Feb. 9, 2021) ("the existence of such evidence does not mean that the ALJ erroneously evaluated [these opinions], especially where, as here, there was ample other evidence supporting the ALJ's conclusion. It is the ALJ's job to resolve conflicting record evidence and the Court must defer to that resolution.")

In this case, ALJ Baird properly reviewed the evidence and assessments to formulate the RFC on the record as a whole. Plaintiff's counsel agreed the administrative record was complete and the hearing decision shows there was sufficient evidence for the ALJ to formulate the RFC. *See Beaman v. Comm'r of Soc. Sec.*, 18-cv-01344, 2020 WL 473618, *5 (W.D.N.Y. Jan. 27, 2020) ("[p]laintiff's argument that the ALJ based her highly specific RFC based upon her own lay opinion necessarily fails[;] [i]t is clear that the ALJ fashioned her RFC finding by referring to [the consultative examiner's opinion] and incorporating additional restrictions based on [p]laintiff's own testimony").

**ACCORDINGLY, it is**

> **ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is
>
> > **DENIED;** and it is further
>
> **ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 11) is
>
> > **GRANTED.**

Dated: December 12, 2023          *J. Gregory Wehrman*
Rochester, New York               HON. J. Gregory Wehrman
                                  United States Magistrate Judge